# Welker *v.* Metcalf, Appellant.

209
f 29 SC
          373
          561

*Contract—Breach of promise of marriage—Form of action—Trespass—Assumpsit—Pleading—Objection to form of action.*

Where an action for breach of promise of marriage is brought in trespass, it is too late for the defendant to object to the form of action after he has ruled the plaintiff to file her declaration, has himself filed a plea of "not guilty," has then ruled the plaintiff to file a bill of particulars, and subsequently when the case is first called for trial secures a continuance at his own cost.

*Contract—Breach of promise of marriage—Defense—Character of woman —Chastity.*

In an action by a woman against a man to recover damages for breach of promise of marriage, where the court affirms the defendant's point that "there is no evidence in the case, that the defendant at the time of the alleged promise to marry, had any knowledge of the conduct of the plaintiff being other than that of a chaste and virtuous woman," it is error for the court to submit to the jury the question whether or not the defendant knew the plaintiff was of bad character for chastity at the time he entered into the alleged marriage contract.

Argued May 10, 1904. Appeal, No. 140, Jan. T., 1903, by defendant, from judgment of C. P. Blair Co., June T., 1901, No. 246, on verdict for plaintiff in case of Emma Welker v. H. Z. Metcalf. Before FELL, BROWN, MESTREZAT, POTTER and THOMPSON, JJ. Reversed.

Trespass to recover damages for an alleged breach of promise of marriage. Before BELL, P. J.

At the trial plaintiff testified that about September 1, 1898, there was a mutual agreement to marry entered into between herself and defendant; that the defendant put off the marriage, alleging the illness of his daughter, and finally in May, 1901, broke the engagement altogether. The defendant denied the contract. A number of letters between the parties were offered in evidence. The defendant alleged that during the years from 1897 to 1900, plaintiff was leading an improper life, but that he knew nothing of it.

The court charged in part as follows:

[Then you will have with you in your jury room the letters written by Mr. Metcalf to Mrs. Welker, which she has

produced here. She says there were others written, but
these are the only ones that have been preserved. You will
examine these letters and determine whether they are love
letters, such as she alleges them to be, or whether they are
letters of platonic friendship, such as Mr. Metcalf alleges. She
testifies that one reason why they are apparently cold in their
tone and do not seem to be very amorous or loving letters is
that Mr. Metcalf requested her to abstain from putting any-
thing in the nature of affection or love in the letters for fear
they might fall into other hands than his own, for fear, espe-
cially, that his daughter might get hold of them. He denies
that. Then it is claimed on the part of Mrs. Welker, the plain-
tiff, that these letters, or at least some of them, wind up with
" much love and kisses," and in one or two letters he says,
" now dear," etc. ; and it is claimed on the part of Mr. Metcalf
that some wind up " yours with respect," and when he sends
love to Mrs. Welker he always sends it to her friend, " Mazie."
You have heard these letters and their contents commented
upon by the respective counsel. You will have them in the
jury room and you can determine how they strike you, whether
as love letters or letters of friendship. Of course, if they are
love letters, such letters as a man of age, education and posi-
tion in life of Mr. Metcalf would write to a lady of the age and
position in life of the plaintiff, they would be very strong corrob-
oration of the allegation that there was an engagement of mar-
riage.] [3]

[If you determine on the weight of the evidence that there was
no engagement of marriage between them, then you would
stop right there and find for the defendant; but if on the
weight of the evidence you determine there was an engage-
ment of marriage between them then you would go on and in-
quire in the second place as to the character of Mrs. Welker
for chastity. It is alleged on the part of the defendant that
in 1897, 1898, 1899 and 1900, he did not know that Mrs. Wel-
ker was leading an unchaste life; that she was living over
Mateer's drug store with a companion, " Mazie," and that these
two ladies had no ostensible means of livelihood, and that they
received entirely too many gentlemen visitors; that gentle-
men, some of them from out of town, and some citizens of Al-
toona, went there at unseemly hours of the night, as testified

by the two policemen; that Mrs. Welker was of unchaste character, and that Col. Maxwell lived there on rather equivocal terms, and that Col. Maxwell, on one occasion, as testified to by Mr. McKee, was there to a beer lunch, and Mr. McKee says Col. Maxwell took her out of the parlor, and it is insinuated at least on the part of the defendant that Col. Maxwell was criminally intimate with the prosecutrix. Then you have the testimony of ex-sheriff Bell, that he went there and took a gentleman by the name of Graham, from a distance, there. On the contrary it is claimed by Mrs. Welker that she came to Altoona with the idea of getting some employment; that she had $3,000 of her own money, and it was not necessary for her immediately to go to work, and in 1897 or 1898, she became engaged to Mr. Metcalf, and was waiting from time to time for him to marry her; and that the men going there at night, if they did go there at all, went there to see Col. Maxwell, and did not go there to see her at all. You will determine on the weight of the evidence whether Mrs. Welker, the plaintiff, at the time she entered into the alleged contract of marriage, and down to 1901, was of bad character for chastity, you will determine that question on the weight of the evidence; if on the weight of the evidence you determine that she was not of bad character for chastity, then you can dismiss that question of character for chastity from the case entirely; but if on the weight of the evidence you determine she was of bad character for chastity, then you can give such bad character for chastity two results. First. If Mr. Metcalf was ignorant of her character when he entered into the engagement to marry, if he did enter into such engagement, then he would not be bound to carry it out with a woman of bad character for chastity, and your verdict should be for the defendant. But if when he entered into the contract to marry her he knew that she was of bad character for chastity, or found it out during the course of the engagement, and still persisted in keeping up the engagement, all the effect that the bad character for chastity would have would be to mitigate the damages which a jury should give the plaintiff in the case.] [5]

[Now, gentlemen, all the plaintiff would be entitled to in this case, if you find for the plaintiff, would be compensatory damages, unless you find that the defendant, without any probable

cause, made an uncalled for attack on her chastity here in court. It is the law that where a defendant in a breach of promise case makes an uncalled for attack, an attack without probable cause on the chastity of the plaintiff, and fails to establish such want of chastity, that then the jury can consider such uncalled for attack and determine whether it warrants them in punishing the defendant by imposing exemplary or punitive damages. Exemplary or punitive damages are the fourth class of damages, and the word punitive suggests the definition, damages which are intended not to compensate the plaintiff, but to punish the defendant, but such exemplary damages are not to be allowed by the jury in this case unless when an attack on the chastity of the plaintiff is made there is a want of probable cause. Probable cause is a reasonable ground to believe that the allegation is true. And if you arrive at this question you ask yourself, if you find it was not true, had Mr. Metcalf in his defense a reasonable ground for believing that these aspersions on the character of Mrs. Welker were correct, or did he make them knowing they were incorrect and untrue, with the idea of holding her up to public ridicule and scorn on false accusations in the courthouse. If he had reasonable ground for making aspersions, even if they are not true, you should not allow any punitive or exemplary damages.] [6]

Verdict and judgment for plaintiff for $2,466.67. Defendant appealed.

*Errors assigned* were (1) in overruling defendant's demurrer; (2) in refusing to instruct the jury that no recovery could be had because the action was brought in trespass and not in assumpsit; (3, 5, 6) above instructions, quoting them.

*A. A. Stevens*, of *Stevens & Pascoe*, with him *W. H. Bridenbaugh*, for appellant.—Damages for breach of promise of marriage are recoverable in an action of assumpsit, not in trespass: Donovan v. Foley, 5 Pa. Dist. Rep. 91; Harding v. Lee, 12 Pa. Dist. Rep. 49; Von Storch v. Griffin, 77 Pa. 504.

A man is not bound by a contract of marriage, if in ignorance of her true character he has entered into it with a woman who has earned an evil reputation by a vicious or reckless life: Von Storch v. Griffin, 77 Pa. 504.

*J. F. Sullivan* and *A. V. Dively,* of *Dively & Dively,* for appellee.—Trespass was the proper action: Hay v. Graham, 8 W. & S. 27 ; Baldy v. Stratton, 11 Pa. 316 ; Moritz v. Melhorn, 13 Pa. 331 ; Phelin v. Kenderdine, 20 Pa. 354 ; McCormick v. Robb, 24 Pa. 44 ; Beelman v. Roush, 26 Pa. 509 ; Wagenseller v. Simmers, 97 Pa. 465 ; Gring v. Lerch, 112 Pa. 244 ; Bleiler v. Koons, 132 Pa. 401.

The only case reported in which an action of assumpsit was brought is the case of Van Storch v. Griffin, 77 Pa. 504. That case was decided by this court May 10, 1875. The question of the form of action was not raised before this court.

The defendant is too late to object to the form of action when he has ruled the plaintiff to file his declaration and entered his plea of " not guilty," ruled the plaintiff for bill of particulars and received same, and subsequently, when the cause was reached and ready for trial, has it continued on his motion and at his expense, and placed on the trial list and ready for trial a second time : Coates v. McCamm, 2 Brown, 173 ; Stimmel v. Miller, 8 Pa. C. C. Rep. 128 ; Hoopes v. Pusey, 2 Chester County, 306 ; Beitler v. Study, 10 Pa. 418 ; Stoekle v. Stoekle, 2 W. N. C. 534 ; Myers v. Wogan, 55 Pa. C. C. Rep. 266.

Parties are presumed to intend what their conduct fairly indicates ; an engagement to marry him may with perfect propriety be inferred by the jury from their conduct, their treatment to each other, their epithets, their letters, their habits : Wagenseller v. Simmers, 97 Pa. 465 ; Waters v. Bristol, 26 Conn. 398.

Mere improprieties not amounting to unchastity is no defense to an action of breach of promise of marriage, but only goes in mitigation of damages : Von Storch v. Griffin, 71 Pa. 240.

OPINION BY MR. JUSTICE MESTREZAT, May 25, 1904:

The defendant was too late in raising the question of the right of the plaintiff to maintain an action of trespass for the injuries complained of in this case. The writ was issued on May 29, 1901. The defendant appeared by counsel, and on July 8 ruled the plaintiff to file her declaration on or before the first Monday of the following August. The plaintiff's statement was filed on July 13, and on the same day she ruled

the defendant to plead. The plea of "not guilty" was entered by the defendant on August 5, 1901, and on September 2 he ruled the plaintiff to file a bill of particulars, which was done on September 16, 1901. The case was called for trial on November 11, and was continued on the application and at the costs of the defendant. On February 5, 1902, defendant's counsel moved the court for leave to withdraw the plea and to file a special demurrer. The record discloses no action by the court on this motion. The demurrer was filed and overruled.

In this state of the record the learned judge was right in refusing to permit the defendant to withdraw his plea. The statement which he ruled the plaintiff to file informed him of the cause and of the form of action. He then had the information as well as the opportunity to enable him to plead intelligently and to attack the form of action, if he so desired. Instead of filing a demurrer and raising the question of the right of the plaintiff to maintain trespass for the cause of action set out in the statement, he entered a plea of not guilty, thereby admitting that the action was proper in form, and waiving his right to attack it on that ground. Subsequently he ruled the plaintiff to file a bill of particulars, and when the case was on the trial list, had it continued at his own cost without any suggestion by him that the plaintiff had mistaken her form of action. It was nearly three months after the postponement of the trial, that he made his first attempt to abate the action by filing a demurrer. He was clearly too late, and by his delay must be held to have waived any defect or error in the form of action.

The fifth assignment must be sustained. The court affirmed the defendant's fourth point that " there is no evidence in the case that the defendant at the time of the alleged promise to marry, had any knowledge of the conduct of the plaintiff being other than that of a chaste and virtuous woman." It was therefore manifest error to submit to the jury, as the trial court did, the question whether or not the defendant knew the plaintiff was of bad character for chastity at the time he entered into the alleged marriage contract. The plaintiff's character for chastity at that time and the defendant's knowledge of it, were both material facts in the case. If her char-

acter in this respect was bad at the date of the contract, and the defendant then knew the fact, her bad character would be no defense to this action. If, however, he was ignorant of the fact, her bad character can be interposed as a defense and the contract cannot be enforced against him. "A man has a right to require," says WOODWARD, J., in Von Storch v. Griffin, 77 Pa. 504, "that his wife shall come to him with an unstained name. If he is inveigled into an engagement by a harlot, he is the victim of a sheer, bald fraud. Elaboration of a subject like this would be simple platitude. It is enough to say, that the law will not enforce a contract of marriage in favor of a party to it who is not fit to be married at all. A man is not bound by such a contract if, in ignorance of her true character, he has entered into it with a woman who has earned an evil reputation by a vicious or reckless life."

The learned judge submitted to the jury with proper instructions, the question of the character of the plaintiff for chastity. There was sufficient evidence to warrant the submission. He then told the jury that if Mrs. Welker's character for chastity was bad, and the defendant was ignorant of the fact, the verdict should be for the defendant, but if he knew her character when he entered into the contract, or found it out during the engagement and persisted in keeping up the engagement, her bad character would not prevent a recovery, but would only mitigate the damages. The verdict was for the plaintiff. The jury, therefore, under the charge found that the plaintiff's character for chastity was not bad, or that it was bad but the defendant knew the fact. What their finding was on this question is, of course, not known. But that they may have found that the defendant knew the plaintiff's character was bad when there was no evidence to support the finding requires the verdict to be set aside. The jury should have been plainly told that if they found that Mrs. Welker's character for chastity was bad at the time the marriage contract was entered into, there could be no recovery in the action, and the verdict should be for the defendant.

As the case goes back for a retrial, we do not deem it necessary to consider the other assignments of error. The letters were admissible as evidence tending to prove the alleged con-

tract and we think the charge, taken as a whole, left the weight to be given them to the judgment of the jury.

The fifth assignment is sustained, and the judgment is reversed with a venire facias de novo.

Mr. Justice Brown, concurring:

I concur in the reversal of this judgment, but would reverse it without a venire. The defendant moved for leave to withdraw his plea of not guilty, and the court thereupon permitted the demurrer to be filed, and acted upon it. Having thus permitted the defendant to raise the question of the plaintiff's right to sue in trespass, instead of bringing her action in assumpsit for breach of contract, the demurrer should have been sustained.

Mr. Justice Potter:

I concur in the view expressed by my Brother Brown.